# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

WELLS FARGO BANK, N.A.,

        Plaintiff,

v.

NATIONWIDE MORTGAGE BANKERS, INC.,

        Defendant.

Civil No. 22-2176 (JRT/TNL)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

---

Joelle Groshek, **FAEGRE DRINKER BIDDLE & REATH LLP,** 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402; Lance W. Lange, **FAEGRE BAKER DANIELS LLP,** 801 Grand Avenue, Suite 3100, Des Moines, IA 50309, for Plaintiff.

Lauren M. Weber, **FELHABER LARSON,** 220 South Sixth Street, Suite 2200, Minneapolis, MN 55402; Roger Marion, **MARION & ALLEN, P.C.,** 488 Madison Avenue, Suite 1120, New York, NY 10022, for Defendant.

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") brings this action against Defendant Nationwide Mortgage Bankers, Inc. ("Nationwide") alleging breach of contract and requesting contractual attorney's fees stemming from Nationwide's alleged violation of certain obligations related to mortgage loans it sold to Wells Fargo. Wells Fargo alleges that a written agreement between the parties required Nationwide to represent that the mortgage loans it sold to Wells Fargo had certain characteristics, otherwise Nationwide was required to repurchase such loans or reimburse and indemnify Wells Fargo. Wells Fargo seeks damages, costs, and fees for alleged breach of this agreement.

Nationwide now moves to dismiss the action in its entirety, arguing that Wells Fargo failed to state a claim upon which relied may be granted. Because the Court finds that Wells Fargo has alleged sufficient facts at this stage, the Court will deny Nationwide's motion.

## BACKGROUND

### I. FACTS

Defendant Nationwide issues loans to home buyers purchasing new residences and homeowners refinancing their residences. (Compl. ¶ 2, Sept. 7, 2022, Docket No. 1.) It secures the refinancing loans with mortgages on the borrowers' residences. (*Id.*) On or about January 7, 2019, Nationwide and Plaintiff Wells Fargo entered into a Loan Purchase Agreement ("LPA"). (*Id.* ¶ 14.) Under that agreement, Nationwide was to sell mortgage loans to Wells Fargo. (*Id.* ¶¶ 3, 15.) Wells Fargo alleges that the LPA incorporates the terms of the Wells Fargo Funding Seller Guide ("Seller Guide"), which together set forth the representations and warranties Nationwide makes to Wells Fargo for the mortgage loans Nationwide sells under the agreement. (*Id.* ¶ 15.) Wells Fargo alleges that Nationwide agreed to only sell mortgage loans that met the requirements of the Seller Guide. (*Id.* ¶ 17.)

After Wells Fargo purchased mortgage loans from Nationwide, Wells Fargo sold the mortgage loans to various investors. (*Id.* ¶ 18.) If a mortgage loan did not meet the requirements of a subsequent purchasing investor, Wells Fargo would be required to

repurchase and/or indemnify the investor for its losses on the loan.  (*Id.* ¶ 19.)  Wells Fargo claims that when it reviewed the purchased mortgage loans and found that they did not meet the requirements of the Seller Guide, the contract provided that Nationwide Mortgage was required to repurchase and/or indemnify Well Fargo for its losses on such loans.  (*Id.* ¶ 20.)

Nationwide sold at least three mortgage loans that allegedly violated Nationwide's representations and warranties under the contract according to Wells Fargo.  (*Id.* ¶ 25.) The first was a residential mortgage loan secured by a property in Valley Stream, New York (the "Valley Stream Loan"), which Wells Fargo purchased on November 18, 2020. (*Id.* ¶ 26.)  Wells Fargo alleges that the loan file for the Valley Stream Loan contained a transaction misrepresentation, which violates the requirements of the Seller Guide and resulted in Wells Fargo sustaining a loss.  (*Id.* ¶¶ 28–30.)

The second loan was for a residential mortgage secured by a property in Davenport, Florida (the "Davenport Loan") that Wells Fargo purchased on June 11, 2019. (*Id.* ¶ 34.)  Wells Fargo alleges that the loan file for the Davenport Loan contained an undisclosed debt, which violates the requirements of the Seller Guide and caused it to sustain a loss as a result.  (*Id.* ¶¶ 36–38.)

The third was a residential mortgage loan secured by a property in Brooklyn, New York (the "Brooklyn Loan") that Wells Fargo purchased on December 17, 2020.  (*Id.* ¶ 42.) Wells Fargo represents that the loan file for the Brooklyn Loan contained an employment

misrepresentation, which violates the requirements of the Seller Guide.  (*Id.* ¶¶ 44–45.) Wells Fargo alleges that it is sustaining and will sustain further loss because the Brooklyn Loan does not comply with the requirements of the Seller Guide.  (*Id.* ¶ 46.)

For all three loans, Wells Fargo sent an invoice for the amount owed at the time Wells Fargo sustained losses, but Nationwide refused to repurchase and/or indemnify Wells Fargo for its losses on all three of these mortgage loans.  (*Id.* ¶¶ 31–32, 39–40, 47– 48.)  Nationwide also did not pay the fees and penalties Wells Fargo claims are required under the contract.  (*Id.* ¶¶ 33, 41, 49.)

Further, Wells Fargo alleges that the contract requires Nationwide to pay costs and/or fees in a variety of situations, such as when Nationwide fails to ensure taxes were paid or sells loans with title defects.  (*Id.* ¶ 50.)  Wells Fargo claims that Nationwide failed to comply with these provisions on at least 36 occasions.  (*Id.* ¶ 51.)  Nationwide has likewise refused to pay the costs and fees identified by Wells Fargo for these alleged failures to comply.  (*Id.* ¶¶ 52–53.)

## II.   PROCEDURAL BACKGROUND

Wells Fargo commenced the instant action on September 7, 2022.  In its Complaint, it seeks damages under three causes of action: (1) breach of contract as to loan representations and warranties, (2) breach of contract as to contractual loan costs and fees, and (3) a contractual right to payment of attorneys' fees.  (*Id.* at 10–13.)  Wells Fargo asserts that Nationwide breached the contract by refusing to repurchase or indemnify

Wells Fargo for its losses associated with these loans and has also refused to pay the fees and fines specified in the contract. (*Id.* ¶¶ 32, 40, and 48.) It further alleges that Nationwide failed to comply with a variety of provisions in the Seller Guide and refuses to pay Wells Fargo for the costs and expenses associated with this noncompliance. (*Id.* ¶¶ 51–53.) Finally, Wells Fargo alleges that Nationwide agreed to indemnify Wells Fargo for any liabilities, expressly including attorney's fees, for breaching the agreement under section 305.10 of the Seller Guide and is therefore entitled to recover fees and costs. (*Id.* ¶ 23.) Thus, Wells Fargo asserts it is entitled to recover attorneys' fees and related costs it incurs in enforcing its rights under the contract. (*Id.* at 12–13.)

Nationwide then filed this Motion to Dismiss all claims against it. (Mot. Dismiss, Oct. 21, 2022, Docket No. 6.)

## I.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the Complaint as true to determine if the Complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the motion to dismiss stage, the Court may consider the allegations in the Complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the Complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor.  *Ashley Cnty. v. Pfizer, Inc*., 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the Complaint's factual allegations as true and construes the Complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a Complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.   ANALYSIS

### A.  Breach of Contract – Loan Representations and Warranties

Nationwide argues that Wells Fargo's first breach of contract claim fails because the terms that were supposedly breached were not alleged in the Complaint and Wells Fargo failed to allege causation.  Nationwide asserts that even if causation had been alleged, the claim would still fail because Wells Fargo's damages were caused by the loans not meeting undisclosed sales criteria of new buyers, with no connection to Nationwide.

Under Minnesota law, a breach of contract claim contains four elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages."  *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000) (citing *Briggs Trans. Co. v.*

*Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1970)).  The formation of a contract requires an offer, acceptance, and consideration.  *See Taxi Connection v. Dakota, Minn. & E. R.R. Corp.*, 513 F.3d 823, 826 (8ᵗʰ Cir. 2008) (citing *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006)); *see also Cederstrand v. Lutheran Bhd.*, 117 N.W.2d 213, 220–21 (Minn. 1962).  "Consideration is something of value exchanged for a performance or promise of performance."  *In re MJK Clearing, Inc.*, 408 F.3d 512, 515 (8ᵗʰ Cir. 2005) (citing *E.J. Baehr v. Penn–O–Tex Oil Corp.*, 104 N.W.2d 661, 665 (Minn. 1960)).

Wells Fargo has sufficiently alleged breach of contract as to the loan representations and warranties.  There is no doubt that the LPA was a contract formed between the parties.  Likewise, Wells Fargo's argument that the Seller Guide is part of the contract is supported by the LPA, which acknowledges that the Seller Guide is part of the agreement for Wells Fargo to purchase loans from Nationwide.  (Compl., Ex. 1 at 2.)  The second element is also satisfied because the parties have not provided that Wells Fargo needed to satisfy any conditions precedent.

Wells Fargo alleges breach in specific terms as it relates to the three different loans.  Wells Fargo alleges that Nationwide failed to ensure the loans conformed to the terms of the Seller Guide.  Wells Fargo alleges that Nationwide acknowledged those terms at the time it signed the LPA.  Though Nationwide argues this pleading is insufficient without attaching the Seller Guide to Wells Fargo's Complaint, it is unnecessary at the

motion to dismiss stage to attach the full contract. *See Rust Consulting, Inc. v. Schneider Wallace Cottrell Konecky Wotkyns, LLP*, No. 17-4981, 2018 WL 1247390, at *4 n.3 (D. Minn. Mar. 9, 2018) ("The fact that [the plaintiff] did not attach a copy of the contract to its complaint is not fatal. [The defendant] cites to no case, and the court can find none, that requires the plaintiff to attach a copy of the contract to the complaint in a breach-of-contract action.").

Lastly, Wells Fargo has sufficiently alleged that Nationwide's breach caused Wells Fargo to suffer monetary losses, a quintessential harm. Nationwide argues Wells Fargo has not sufficiently pled that Nationwide's alleged breaches caused Wells Fargo's losses with the third party independent investors. While Wells Fargo is correct that causation is not explicitly an element of a breach of contract claim under Minnesota law, a plaintiff may only recover "damages sustained by reason of the breach which arose naturally from the breach or could reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of the breach." *Kaplan v. Mayo Clinic*, 947 F. Supp. 2d 1001, 1007 (D. Minn. 2013) (quoting *Lesmeister v. Dilly*, 330 N.W.2d 95, 103 (Minn. 1983)).

The facts alleged create the reasonable inference that when the parties entered into the contract, they reasonably contemplated that selling loans which do not conform with the Seller Guide would cause Wells Fargo to lose money on those loans. *See Iqbal*,

556 U.S. at 678.  Therefore, the Court finds that Wells Fargo has alleged enough facts to support its breach of contract claim at this stage.

Nationwide argues that even if Wells Fargo can show the elements for breach of contract, the claim is barred by the merger doctrine.  The merger doctrine is a rule that applies specifically to the conveyance of real property.  *Bruggeman v. Jerry's Enters., Inc.*, 591 N.W.2d 705, 708–09 (Minn. 1999).  The general rule is that a purchase agreement merges with a deed upon closure of the sale; the merger then generally "precludes parties from asserting their rights under a purchase agreement after the deed has been executed and delivered." *Id.* at 708.  Thus, conditions precedent in prior agreements merge into a deed and are deemed waived or abandoned if unperformed when the deed is conveyed and executed. *Id.*  But in Minnesota, the merger doctrine does not apply to conditions subsequent—such as repurchase agreements—which necessarily cannot be performed until sometime after closing. *Id.* at 710.  Further, the merger doctrine only creates a presumption of merger, which may be overcome with sufficient evidence to the contrary such as a survival clause in the prior agreement. *Id.*

Whether the merger doctrine applies in this situation is a matter of first impression, as neither the Court nor the parties found any case law applying the merger doctrine to similar facts.  At this time, the Court finds the merger doctrine does not apply here.

First, the LPA relates to the sale and purchase of mortgage loans, not the actual conveyance of real property.  That the loans were secured by real property does not change that fact.  Second, the contract between the parties as to the loan representations and warranties essentially constitutes a repurchase agreement. Nationwide's alleged obligation to repurchase or indemnify Wells Fargo for loans that did not meet the requirements of the Seller Guide necessarily could not be performed prior to signing the LPA.  It was a condition subsequent which could only be performed once the parties signed the LPA and Nationwide began to sell Wells Fargo loans.   Thus, the contract concerns repurchasing and does not fall under the purview of the merger doctrine. Lastly, the Seller Guide is not a previous agreement being "merged into the deed," but rather is expressly incorporated and together with the LPA forms the whole of the contract between the two parties. *Bruggeman*, 591 N.W.2d at 709.  Therefore, the Court finds that the merger doctrine does not apply, and thus will deny Nationwide's motion as to Count I.

### B.  Breach of Contract – Contractual Loan Costs and Fees

Nationwide argues that Wells Fargo's second cause of action for breach of contract as to contractual loan costs and fees is merely a demand for reimbursement that is not found on the face of the contract and is based on Count I.  Thus, it should be dismissed because it does not state an independent cause of action.  Further, even if the Complaint

can be read as referencing further breaches before closing, Nationwide argues this cause of action is also foreclosed by the merger doctrine.

Wells Fargo alleges that under the LPA and incorporated Seller Guide, Nationwide is required to pay costs and/or fees to Wells Fargo for a variety of situations outside of the three loans noted in Count I.  Specifically, Nationwide allegedly breached the contract by failing to comply with this contractual provision with respect to at least "1 escrow deficiency, 19 underwriting fees, 1 miscellaneous fee, 4 pairoff fees, 1 early payoff fee, and 10 final document fees."  (Compl. ¶ 51.)  Wells Fargo attached a Client Billing Invoice that identified how the additional loans failed to comply with the Seller Guide.  (*See* Compl., Ex. 5.)  While Count I only applied to three loans, the Client Billing Invoice shows additional loans with different identifying numbers that failed to comply with the Seller Guide.  (*Id.*)   Thus, when Wells Fargo issued Nationwide this Client Billing Invoice for $57,785.85, and Nationwide refused to pay the costs and fees associated with these additional loans, Wells Fargo allegedly suffered monetary damages.

Contrary to Nationwide's assertions, these facts create a reasonable inference that these costs and fees are separate and distinct from Wells Fargo's loan repurchase demands in Count I.  Simply put, they are the result of different loans than the three loans in Count I.  This is enough to support a second breach of contract claim at the motion to dismiss stage.   Nationwide's argument that this cause of action is foreclosed by the merger doctrine fails for the same reasons as stated for Count I.  Therefore, Wells Fargo

has sufficiently alleged a breach as to Count II and the Court will deny Nationwide's motion as to this claim.

### C. Contractual Attorney's Fees

Lastly, Wells Fargo claims it is contractually entitled to attorney's fees. Similar to Count II, Nationwide asserts that Count III is another demand based on Count I with no independent cause of action, and thus should be dismissed. Wells Fargo, on the other hand, counters that this is indeed a separate cause of action because attorney's fees are provided for by a distinct section in the contract—section 305.10 of the Seller Guide.

Under Minnesota law, attorney's fees are not recoverable in a breach of contract claim absent a contractual provision making them recoverable. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co., Inc.*, 272 F. Supp. 3d 1099, 1108 (D. Minn. 2017) (citing *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000)). Further, attorney's fees are "special damages" that parties are required to plead under Rule 9(g) of the Federal Rules of Civil Procedure. *See Nat'l Liberty Corp. v. Wal-Mart Stores, Inc.*, 120 F.3d 913, 916 (8th Cir. 1997) (citing *Western Cas. & Surety Co. v. Sw. Bell Tel. Co.,* 396 F.2d 351, 356 (8th Cir. 1968)).

Since Wells Fargo alleges that there is a contractual provision that allows it to recover attorney's fees, that is enough to maintain the claim. Wells Fargo "specifically stated" that it can recover attorney's fees under the contract, and this is enough to satisfy the pleading standard under Rule 9(g). Fed. R. Civ. P. 9(g) ("If an item of special damage

is claimed, it must be specifically stated.").  Certainly, Wells Fargo will later have to produce said provision to prove up the claim.  But at the motion to dismiss stage, Wells Fargo is only required to sufficiently allege facts that support the claim, and that is satisfied here.  Thus, the Court will deny Nationwide's motion to dismiss as to this claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 6] is **DENIED**.


DATED: April 11, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

13